IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 05–cv–00728–EWN–BNB

CARLOS SANFORD,

      Plaintiff,

v.

ALLSTATE INDEMNITY COMPANY, an
Illinois corporation,

      Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

This is an insurance case.  Plaintiff Carlos Sanford asserts the following claims against Defendant Allstate Indemnity Company: (1) declaratory relief and reformation of the insurance contract; (2) breach of the insurance contract; and (3) willful and wanton statutory bad faith.  This matter is before the court on: (1) Defendant's "Motion for Summary Judgment," filed March 14, 2006; and (2) Plaintiff's "Motion for Partial Summary Judgment Pursuant to Federal Rule of Civil Procedure 56," filed March 27, 2006.  Jurisdiction is premised upon 28 U.S.C. § 1332 (2006), diversity of citizenship.

# FACTS

### 1.     *Factual Background*

### a.     *Overview of No-Fault Act and* **Brennan**

Before turning to the substance of the motions before the court, I discuss the portions of

the Colorado Auto Accident Reparations Act ("CAARA") relevant to this case.[1]  Repealed in

2003, CAARA was Colorado's No-Fault Insurance Act.  *See Clark v. State Farm Mut. Auto. Ins.*

*Co.*, 292 F. Supp. 2d 1252, 1258 (D. Colo. 2003) (citing *Nationwide Mut. Ins. Co. v. United*

*States*, 3 F.3d 1392, 1394 [10th Cir. 1993]).  CAARA governed the legal rights of automobile

accident victims[2] and their insurers in Colorado and required that motor vehicle owners maintain

minimum insurance coverage on their vehicles, including no-fault Personal Injury Protection

("PIP") coverage.  *See* Colo. Rev. Stat. § 10–4–705 (2002); *Brennan v. Farmers Alliance Mut.*

*Ins. Co.*, 961 P.2d 550, 553 (Colo. Ct. App. 1998), *cert. denied*, 1998 Colo. LEXIS 587 (Colo.

Aug. 24, 1998).  The required mandatory minimum PIP coverage provided for reasonable and

necessary medical care, rehabilitative care, lost wages, and death benefits in the event of an

accident without regard to fault.  *See* Colo. Rev. Stat. §§ 10–4–706(1)(b)–(e).  In relevant part,

CAARA required insurers to offer coverage providing for:

---

[1] CAARA comprised Colorado Revised Statutes sections 10–4–701 to 10–4–726, *repealed by* Laws 1997, H.B. 97–1209, § 8, effective July 1, 2003.  *See* Colo. Rev. Stat. § 10–4–726 (effective July 1, 2003).  Because CAARA has been repealed, I cite to the 2002 version of Colorado Revised Statutes, except where otherwise required.

[2] Section 10–4–707 states that named insureds and their passengers, among others, receive coverage under CAARA.  *Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550, 553 (Colo. Ct. App. 1998).

Compensation without regard to fault, up to a limit of fifty thousand dollars per person for any one accident, for payment of all reasonable and necessary expenses for medical . . . and nonmedical remedial care and treatment . . . performed within five years after the accident for bodily injury arising out of the use or operation of a motor vehicle;

Compensation without regard to fault up to a limit of fifty thousand dollars per person for any one accident within ten years after such accident for payment of the cost of rehabilitation procedures or treatment and rehabilitative occupational training necessary because of bodily injury arising out of the use or operation of a motor vehicle; [and]

Payment of benefits equivalent to one hundred percent of the first one hundred twenty-five dollars of loss of gross income per week, seventy percent of the next one hundred twenty-five dollars of loss of gross income per week, and sixty percent of any loss of gross income per week in excess thereof, with the total benefit under this subparagraph (I) not exceeding four hundred dollars per week, from work the injured person would have performed had he not been injured during a period commencing the day after the date of the accident, and not exceeding fifty-two additional weeks.

*Id.* §§ 10–4–706(1)(b)(I)–(d)(I).

CAARA also required that insurers provide and offer an option for increased PIP coverage in exchange for higher premiums.  *See id.* § 10–4–710(1); *Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1238 (10th Cir. 2003).  Specifically, as relevant to the instant case, CAARA required that:

Every insurer shall offer the following enhanced benefits for inclusion in a complying policy, in addition to the basic coverages described in section 10–4–706, at the option of the named insured:

(I) Compensation of all expenses of the type described in section 10–4–706(1)(b) without dollar or time limitation; or

(II) Compensation of all expenses of the type described in section 10–4–706(1)(b) without dollar or time limitation and payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would

have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations.

Colo. Rev. Stat. § 10–4–710(2)(a) (2002). The *Brennan* court noted that the "directive of [section] 10–4–710 is to the insurer, not the insured: all that is required is that the insurer offer these extended benefits." 961 P.2d at 554.

### b.    *Factual Context*

Plaintiff was injured in an automobile accident on September 26, 1999, when the vehicle in which he was a passenger struck a parked vehicle. (Def. Allstate's Opening Br. in Support of its Mot. for Summ. J., Statement of Undisputed Material Facts ¶ 1 [filed Mar. 14, 2006] [hereinafter "Def.'s Br."]; *admitted at* Pl. Sanford's Resp. in Opp. to Def.'s Mot. for Summ. J., Resp. to Statement of Undisputed Material Facts ¶ 1 [filed Apr. 4, 2006] [hereinafter "Pl.'s Resp."].) The vehicle was driven by Austin Drake and insured by Defendant pursuant to a policy issued to Clarice Drake. (*Id.*) At the time of Plaintiff's accident, Ms. Drake's policy with Defendant contained the minimum PIP coverage required by Colorado law. (*Id.*, Statement of Undisputed Material Facts ¶ 4; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 4.)

Defendant contends that no later than September 28, 1999, Plaintiff retained Todd Travis to represent him in connection with his claim for PIP benefits from Defendant. (*Id.*, Statement of Undisputed Material Facts ¶ 2; *denied at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 2.)[3] Defendant further contends that Plaintiff expected Mr. Travis to collect any PIP

---

[3]Although Plaintiff denies this fact, it is clear that his denial is partial, relating only to the scope of Mr. Travis's representation of Plaintiff, which Plaintiff asserts to have been limited only

benefits to which Plaintiff was entitled.  (*Id.*, Statement of Undisputed Material Facts ¶ 3; *denied at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 3.)

In October 1999, pursuant to Ms. Drake's policy, Defendant promptly began to pay Plaintiff weekly loss of earning checks at the basic PIP level of $283.86, and such payments continued each week for the fifty-two weeks following the accident.  (*Id.*, Statement of Undisputed Material Facts ¶ 5; *admitted in relevant part at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 5.)  In a letter dated October 22, 1999, Defendant advised Plaintiff that Ms. Drake's policy provided only basic PIP coverage.  (Pl.'s Resp., Statement of Disputed Material Facts ¶ 6; *admitted at* Def. Allstate's Reply Br. in Supp. of its Mot. for Summ. J., Resp. Concerning Pl.'s Disputed Material Facts ¶ 6 [filed May 3, 2006] [hereinafter "Def.'s Reply"].)

Prior to filing the instant case, Plaintiff made no demand for wage loss benefits beyond those Defendant paid to him from September 1999 to September 2000.  (Def.'s Br., Statement of Undisputed Material Facts ¶¶ 6, 7; *admitted in relevant part at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 6, 7.)  Plaintiff filed the instant lawsuit on April 25, 2005, approximately five and one-half years after he received his first basic PIP wage loss payment, and approximately four and one-half years after he received his last basic PIP wage loss payment. (*Id.*, Statement of Undisputed Material Facts ¶ 8; *deemed admitted at* Pl.'s Resp., Resp. to

---

to his "bodily injury claim against Austin Drake," not extending to Plaintiff's claims for "PIP benefits from Defendant."  (Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 2.)

Statement of Undisputed Material Facts ¶ 8.)[4]  The only extended PIP benefits Plaintiff seeks in the instant case are lost wage benefits.  (*Id.*, Statement of Undisputed Material Facts ¶ 9; *deemed admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 9.)

### c.  *Procedural History*

On April 21, 2005, Plaintiff filed a class action complaint in this court.  (Class Action Compl. and Jury Demand [filed Apr. 21, 2005] [hereinafter "Compl."].)  Therein, Plaintiff asserts three claims arising out of his allegation that Defendant failed to make an adequate enhanced PIP offer to its insured: (1) declaratory relief and reformation of the insurance contract; (2) breach of the insurance contract; and (3) willful and wanton statutory bad faith.  (*Id.* ¶¶ 54–71.)  On June 8, 2005, Defendant filed a motion to dismiss the complaint or, in the alternative, to strike Plaintiff's class claims.  (Mot. to Dismiss Compl. or, Alternatively, to Dismiss or Strike Class Claims [filed June 8, 2005].)  On July 12, 2005, Plaintiff filed a response to Defendant's motion to dismiss.  (Pl. Sanford's Am. Resp. to Mot. to Dismiss Compl. or, Alternatively, to Dismiss or Strike Class Claims [filed July 12, 2005].)  On July 27, 2005, Defendant filed a reply in support of its motion to dismiss.  (Def.'s Reply in Supp. of Its Mot. to Dismiss Compl. or, Alternatively, to Dismiss or

---

[4]I emphasize that my procedural rules state: "Any denial [in a brief in opposition to summary judgment] shall be accompanied by a brief factual explanation of the reason(s) for the denial and a *specific reference* to material in the record supporting the denial."  (Practice Standards — Civil, Special Instructions Concerning Motions for Summary Judgment ¶ 4 [emphasis in original].)  As Plaintiff makes no reference — "specific" or otherwise — to the record in connection with his denial, I deem admitted Defendant's contrary factual allegation. Plaintiff makes the same material omission with respect to his denial of Defendant's subsequent proffer.  (*See* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 9.)  Consequently, I also deem Defendant's ninth proffer admitted.

Strike Class Claims [filed July 27, 2005].)  On November 22, 2005, Plaintiff filed a motion for

class certification.  (Pl. Sanford's Mot. for Class Certification Pursuant to Fed. R. Civ. P. 23 [filed

Nov. 22, 2005].)  On January 9, 2006, Defendant filed a response to Plaintiff's motion for class

certification.  (Def. Allstate's Resp. in Opp'n to Pl.'s Mot. for Class Certification [filed Jan. 9,

2006].)  On January 27, 2006, this court filed an order and memorandum of decision that: (1)

granted Defendant's motion to dismiss with respect to putative class members for want of

jurisdiction, and thus (2) denied Plaintiff's motion for class certification, but (3) denied

Defendant's motion to dismiss Plaintiff's claims for want of subject matter jurisdiction.  (Order

and Mem. of Decision [filed Jan. 27, 2006].)

On February 22, 2006, Defendant filed its answer.  (Answer [filed Feb. 22, 2006].)  On

March 14, 2006, Defendant filed its motion for summary judgment.  (Def.'s Br.)  Therein,

Defendant argues: (1) Plaintiff's claims are barred by the relevant statute of limitations; (2)

undisputed facts establish that Defendant offered additional PIP coverage to Ms. Drake; and (3)

undisputed facts establish Plaintiff is not entitled to unlimited additional PIP benefits.  (*Id.* at

8–16.)  On March 4, 2006, Plaintiff filed his response.  (Pl.'s Resp.)  On May 3, 2006, Defendant

filed its reply.  (Def.'s Reply.)

On March 27, 2006, Plaintiff filed his motion for partial summary judgment.  (Pl.

Sanford's Br. in Supp. of Mot. for Partial Summ. J. Pursuant to F.R.Civ.P. [sic] 56 [filed March

27, 2006].)  Therein, Plaintiff argues: (1) the coverage offered to Ms. Drake did not comply with

CAARA and, therefore, the policy must be reformed to include the maximum amount of extended

benefits allowed thereunder; and (2) the effective date of such reformation should be the date of

the accident, since Defendant was aware at that time of its failure to offer extended PIP benefits

as required by CAARA.  (*Id.* at 8–16.)  On May 3, 2006, Defendant filed its response.  (Def.

Allstate's Resp. Br. in Opp'n to Pl.'s Mot. for Partial Summ. J. [filed May 3, 2006].)  On May 23,

2006, Plaintiff filed his reply.  (Pl. Sanford's Reply Br. in Supp. of Mot. for Partial Summ. J.

Pursuant to F.R.Civ.P. [sic] 56 [filed May 23, 2006].)

## ANALYSIS

### 1.      Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant

summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)

(2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc.*

*v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  The moving party bears the

initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the

burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material

matter."  *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325).  The nonmoving

party may not rest solely on the allegations in the pleadings, but must instead designate "specific

facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P.

56(e) (2006).  A fact in dispute is "material" if it might affect the outcome of the suit under the

governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury

to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

**2.      Evaluation of Claims**

Although both parties raise a variety of issues in their summary judgment briefs, the court need only address Defendant's contention that Plaintiff's claims are time-barred by the statute of limitations set forth in CAARA. (Def.'s Br. at 8–11.) Plaintiff responds to this contention by arguing, apparently in the alternative, that his cause of action did not accrue, or should be tolled, until 2003, when he asserts that he retained a second law firm and was told he had a "right" to assert a claim for enhanced PIP benefits. (Pl.'s Resp. 11–19.) For reasons set forth below, I find that no issue of fact exists as to whether Plaintiff's claims are untimely.

**a.      Application of Statute of Limitations**

The parties do not dispute that Plaintiff's claims are based on an alleged violation of CAARA. (*See* Def.'s Br. at 8–9; Pl.'s Resp. at 19.) A three-year statute of limitations applies to "all actions" arising from CAARA, "regardless of the theory upon which suit [was] brought." Colo. Rev. Stat. § 13–80–101(1)(j) (2002); *Nelson v. State Farm Mut. Ins. Co.*, 419 F.3d 1117, 1120 (10th Cir. 2005). A cause of action accrues on the date when a plaintiff "discovered or should have [] discovered by the exercise of reasonable diligence" the "injury, loss, damage, or

conduct giving rise to the cause of action." Colo. Rev. Stat. § 13–80–108(8) (2006); *see also id.* §§ 13–80–108(1), (6) (employing substantially similar language); *Nelson*, 419 F.3d at 1121. For a cause of action to accrue, however, a plaintiff is not required to know of the legal theory supporting the cause of action. *Harrison v. Pinnacol Assurance*, 107 P.3d 969, 972 (Colo. Ct. App. 2004). "[T]he issue of when a plaintiff knew or with reasonable diligence should have known of a cause of action is a question of fact." *Allred v. Chynoweth*, 990 F.2d 527, 529 (10th Cir. 1993) (citing *Maughan v. S.W. Servicing, Inc.*, 758 F.2d 1381, 1387 [10th Cir. 1985]). Accordingly, determination by the court of this issue is not appropriate "unless the evidence is so clear that there is no genuine factual issue." *Maughan*, 758 F.2d at 1388 (citation omitted).

No genuine dispute exists as to the facts material to this issue. After Plaintiff was injured in an accident on September 26, 1999, Defendant advised Plaintiff in a letter dated October 22, 1999 that Ms. Drake's policy provided only basic PIP coverage. (Pl.'s Resp., Statement of Disputed Material Facts ¶ 6; *admitted at* Def.'s Reply, Resp. Concerning Pl.'s Disputed Material Facts ¶ 6.) Defendant paid Plaintiff lost wages until discontinuing them after fifty-two weeks, based upon the limitations imposed by basic PIP coverage. (Pl.'s Resp., Statement of Disputed Material Facts ¶ 12; *admitted at* Def.'s Reply, Resp. Concerning Disputed Material Facts ¶ 12.) The final payment was made on September 27, 2000. (Def.'s Br., Ex. A–5 at 2 [Wage Loss History].) Plaintiff filed the instant lawsuit on April 25, 2005, over five years after he received his first PIP wage loss payment, and over four years after he received his last PIP wage loss payment. (Compl.; Def.'s Br., Ex. A–5 at 1–2 [Wage Loss History].)

Defendant argues that *Nelson v. State Farm Mutual Automobile Insurance Company* compels the determination that the latest possible day Plaintiff's claims accrued was September 27, 2000, when Defendant issued Plaintiff's final wage-loss payment.  (Def.'s Br. at 10.) Although Plaintiff argues that his claim did not accrue until Plaintiff "retained his second counsel in 2003 because [he] was not in a position to have learned about his right to seek the reformation of this policy," Plaintiff inexplicably fails to mention — let alone discuss or distinguish — *Nelson.* (Pl.'s Resp. at 14, *passim.*)

First, the court notes that the date when Plaintiff learned of "his right to seek the reformation" of Ms. Drake's policy is irrelevant to the issue of accrual.  *See* Colo. Rev. Stat. § 13–80–108(8) ("A cause of action for losses or damages . . . shall be deemed to accrue *when the injury, loss, damage, or conduct giving rise to the cause of action* is discovered or should have been discovered by the exercise of reasonable diligence.") (emphasis added).  Knowledge of any "right to seek [] reformation" is *legal* knowledge, and possession thereof does not necessarily bear upon the determination whether Plaintiff knew or should have known the essential *facts* relating to the alleged CAARA violation.  *See Ormiston v. Nelson*, 117 F.3d 69, 72 n.5 (2d Cir. 1997) ("Mere ignorance of the law is, of course, insufficient to delay the accrual of the statute of limitations."); *Harrison*, 107 P.3d at 972 (stating that the relevant inquiry focuses on "when the party bringing the action acquired knowledge of or should have reasonably discovered the essential facts, rather than the applicable legal theory").  The contrary policy suggested by Plaintiff's argument — that knowledge of a legal right rather than awareness of "injury, loss, damage, or conduct" should control the accrual date of a cause of action — suffers from myriad

self-evident deficiencies, the foremost of which would be the subversion of the purposes of statutes of limitations.  *See generally Sulca v. Allstate Ins. Co.*, 77 P.3d 897, 899 (Colo. Ct. App. 2003) ("The purposes of statutes of limitations are to promote justice, discourage unnecessary delay, and preclude the prosecution of stale claims.").

Second, the court finds that *Nelson* is fatal to Plaintiff's claims.  The *Nelson* plaintiff, who submitted a claim under his own insurance policy, alleged that the defendant insurer violated CAARA by failing to offer him enhanced PIP coverage, and demanded reformation and damages for breach of contract.  419 F.3d at 1118.  The *Nelson* court applied the CAARA three-year statute of limitations and held, "whether the action was one for reformation, breach of contract, or violation of state law, the accrual date is when [the plaintiff] knew or should have known that [the defendant] had not offered him extended PIP benefits."  *Id.* at 1121.  The court then affirmed the district court's finding that the plaintiff "should have known at least by the last date he was paid loss-of-wage benefits under the basic, limited PIP policy that [the defendant] had not offered him extended PIP benefits."  *Id.*

The instant case differs slightly from *Nelson* because Plaintiff was not party to the insurance contract between Ms. Drake and Defendant.  This court has encountered such a factual permutation in the past, however, and determined that such a difference does not militate against the conclusion reached in *Nelson*.  In *Colby v. Progressive Casualty Insurance Company*, an injured passenger brought a claim against a driver's insurance carrier for enhanced PIP benefits based on the theory that the carrier had failed to offer the driver enhanced PIP coverage.  2006 U.S. Dist. LEXIS 47212, at *1 (D. Colo. June 30, 2006).  Relying on *Nelson*, the court

-12-

determined that the plaintiff knew or should have known that the defendant had failed to offer

enhanced PIP benefits as of the date when he received the final PIP payment from the defendant.

*Id.* at *2.  The *Colby* court appropriately focused its analysis on the date when the plaintiff

became "aware of his damage" (*i.e.*, cessation of payments), rather than the date the plaintiff

became aware of the legal theory upon which he could predicate a claim to recover for such

damage.  *Id.*; *see also* Colo. Rev. Stat. § 13–80–108(8).

The plaintiff in *Schimmer v. State Farm Mutual Automobile Insurance Company* was also

a passenger involved in an automobile accident who asserted PIP-based claims[5] against the

driver's insurance carrier based on an alleged failure of the insurer to offer enhanced PIP benefits

to the driver.  2006 U.S. Dist. LEXIS 60497, at *3 (D. Colo. Aug. 15, 2006).  Unlike the *Nelson*

plaintiff, the *Schimmer* plaintiff received two letters from the insurer that put him on notice of the

fact that "there were dollar and time limitations on the PIP benefits he would receive." *Id.* at *11;

*see Nelson*, 419 F.3d at 1119–20 (failing to mention any communication between plaintiff and

insurer regarding nature of PIP benefits paid to plaintiff).  Although the letters did not advise the

*Schimmer* plaintiff that (1) the benefits he would receive were basic, or (2) the defendant had

failed to offer the insured enhanced PIP coverage, the court nevertheless held that "the essential

facts in support of [the plaintiff's] CAARA claims were available to him once he received letters

from [the defendant]."  2006 U.S. Dist. LEXIS 60497, at *11–12.  Thus, the court determined

---

[5]Specifically, the plaintiff brought claims for: (1) declaratory relief and reformation; (2) breach of insurance contract for failure to pay PIP benefits; (3) willful and wanton breach of contract; and (4) breach of the duty of good faith and fair dealing.  *Schimmer*, 2006 U.S. Dist. LEXIS 60497, at *5.

the statute of limitations began to run once the plaintiff received the letters from the defendant in July 1999. *Id.* at *12. The plaintiff did not retain counsel and learn that he might be entitled to enhanced PIP benefits until December 2004. *Id.* at *5. Regardless, the court determined that the applicable three-year statute of limitations had long since expired at the time Plaintiff filed suit in October 2005. *Id.* at *12.

Finally, in *Folks v. State Farm Mutual Automobile Insurance Company* — a case that predates the Tenth Circuit's *Nelson* decision — a pedestrian injured by a driver insured by the defendant brought claims arising under PIP,[6] based on the familiar theory that the insurer had failed to appropriately offer the driver enhanced PIP coverage. 04–cv–00243–EWN–BNB at 7–8 (D. Colo. June 30, 2005) (Nottingham, J.). In *Folks*, I found that a letter from the defendant informing the plaintiff that she was only entitled to basic PIP benefits, when viewed in the light most favorable to the plaintiff, did not apprise her of enhanced PIP benefits. *Id.* at 15. Nevertheless, I found that plaintiff became aware of her potential claims on the date when she retained counsel who represented her in connection with her PIP wage-loss claims against the defendant. *See id.* (citing cases charging attorneys with knowledge of local rules and law).

I recognize my finding that the letter was insufficient to trigger accrual of the plaintiff's cause of action is directly contrary to *Schimmer*, and in deep tension with *Colby* and *Nelson*. Indeed, the *Nelson* decision itself necessarily abrogates my finding based on the letter in *Folks*: if

---

[6]Specifically, the plaintiff brought claims for: (1) breach of insurance contract for failure to pay PIP benefits; (2) willful and wanton violation of insurance contract; (3) breach of covenant of good faith and fair dealing; and (4) violation of an insurance-related statute. *Folks*, 04–cv–00243–EWN–BNB at 1.

mere cessation of PIP payments is sufficient to trigger accrual, then a letter expressly stating that a plaintiff is entitled only to basic PIP benefits must be more than sufficient. *See Nelson*, 419 F.3d 1120. That is not to say, however, that *Nelson* had any impact on my finding that retention of counsel was sufficient to trigger accrual. *See Folks*, 04–cv–00243–EWN–BNB at 15; *Ormiston*, 117 F.3d at 72 n.5; *Harrison*, 107 P.3d at 972.

Regardless of whether I focus on the fact that (1) Plaintiff hired a personal injury attorney in September 1999, (2) Defendant notified Plaintiff in October 1999 that he was receiving only basic PIP benefits, or (3) the cessation of such benefit payments in September 2000, Plaintiff's cause of action is time-barred.[7] In the interest of thoroughness, I start with the earliest date Plaintiff's cause of action accrued and move forward in time.

### i.   Under **Folks**, *Plaintiff's Cause of Action Accrued No Later Than September 1999*

If I follow the reasoning set forth in my opinion in *Folks*, Plaintiff's cause of action accrued the moment he retained Mr. Travis in his personal injury case. *See id.* at 15 (holding that the plaintiff became aware of her potential claim for reformation on the day she retained counsel).[8]

---

[7]Although lacking the tragic, mortal beauty of the lifeless body of the woman whom Whitman mourns in *The City Dead-House*, Plaintiff's claims are not unlike that body insofar as they too are "dead, dead, dead." *See* WALT WHITMAN, LEAVES OF GRASS 285–86 (Oxford Univ. Press 1990).

[8]What a small world it is. The counsel the *Folks* plaintiff retained was none other than Mr. Travis himself, who, incidently, sent a letter to the *Folks* defendant: (1) notifying it that he had been retained with respect to the claim; and (2) making PIP-related demands of the carrier. *Folks*, 04–cv–00243–EWN–BNB at 7. Indeed, the letter Mr. Travis sent on behalf of the *Folks* plaintiff is practically identical to a letter Mr. Travis sent to the carrier in the instant case. *Compare id.* (quoting letter from Mr. Travis to insurance carrier: "[t]his firm has been retained by [Plaintiff]

Plaintiff's own evidence demonstrates that he retained Mr. Travis on September 28, 1999.  (Pl.'s Resp., Ex. 1 at 1–2 [Travis Retainer Agreement].)  Thus, Plaintiff's claims became time-barred in September 2002, years before Plaintiff filed this lawsuit.

Plaintiff attempts to sidestep this conclusion by forwarding what I will generously characterize as a wildly disingenuous argument.  Plaintiff attempts to manufacture an issue of fact by creating a false distinction, clearly belied by both logic and Plaintiff's own evidence.  Plaintiff asserts that Mr. Travis only represented him "regarding his bodily injury claim against Austin Drake," and contends that "there is no proof that [Mr.] Travis was hired to 'collect any PIP benefits [Plaintiff] was entitled to receive.'"  (*Id.* at 14; *see id.*, Resp. to Statement of Undisputed Material Facts ¶¶ 2–3, Statement of Disputed Material Facts ¶ 2.)  Based on the "fact" that Mr. Travis was only "representing [Plaintiff] on a *bodily injury* case," Plaintiff asserts that Mr. Travis's failure to surmise the possibility that Plaintiff might be entitled to something greater than basic PIP coverage should not be imputed to him, the client.  (*Id.* at 13–14 [emphasis in original].)  Thus, Plaintiff draws the following analogy: "if [Plaintiff] consulted . . . a [S]ocial [S]ecurity attorney following his accident to determine his eligibility for benefits, there would be no argument this [sic] [Plaintiff] impliedly knew about his PIP options."  (*Id.*)  The court rejects every aspect of this fatuous line of argument.

---

Folks regarding the above referenced claim.  Enclosed please find a signed authorization allowing you to provide a copy of the PIP logsheet to me."), *with* Def.'s Br., Ex. A–3 at 2 (9/28/1999 letter from T. Travis to Allstate Ins. Co.) ("This firm has been retained by [Plaintiff] Sanford regarding the above-referenced claim.  Enclosed please find a signed authorization allowing you to provide a copy of the PIP logsheet to us.").

Indeed, Plaintiff's own evidence indicates that the argument is based on a manipulation of the truth. First, the retainer agreement between Plaintiff and Defendant clearly states that Plaintiff retained Mr. Travis "to pursue a claim *for damages sustained by me* on or about 9/26/99 against any person liable for such damages, including Austin Drake." (Pl.'s Resp., Ex. 1 at 1 [Travis Retainer Agreement] [emphasis added].) Although Plaintiff attempts to parse out a distinction between a "bodily injury claim" and a "PIP claim" and inject such a distinction into the retainer agreement, I need only to highlight that "PIP" stands for "*Personal Injury* Protection" to point out that Plaintiff's distinction is one without a difference.

It gets worse. In response to Defendant's assertion that Mr. Travis represented Plaintiff "in connection with his claim for PIP benefits against [Defendant]," (Def.'s Br., Statement of Undisputed Material Facts ¶ 2), Plaintiff chews up the facts and spits out this gem: "[Mr.] Travis was retained to represent [Plaintiff] on his bodily injury claim against Austin Drake, and the exhibit identified by [Defendant] does not state that [Mr. Travis] is making claims for any unpaid PIP benefits from [Defendant]." (Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 2.) The exhibit Plaintiff mentions is none other than a September 28, 1999 letter that Mr. Travis sent on behalf of Plaintiff to Defendant concerning PIP benefits.[9] (Def.'s Br., Ex. A–3 at 2–3 [9/28/1999 letter from T. Travis to Allstate Ins. Co.].) While Plaintiff may be technically correct

---

[9]The court recognizes that the addressee of the letter is Allstate Insurance Company, rather than Defendant, Allstate Indemnity Company. Since Defendant refers to the two entities interchangeably, the court does too. (*See* Def.'s Reply, Reply Concerning Undisputed Facts ¶ 2.)

that the referenced letter does not expressly state"[Mr. Travis] is making claims for any unpaid

PIP benefits from [Defendant]," the letter unequivocally *indicates* as much:[10]

> [W]e would like to assist [Plaintiff] in obtaining *wage loss benefits* as it appears he
> will be unable to work for some time in the future. To that end, we would ask that
> you forward a Wage and Salary Verification form to his employer at your earliest
> convenience at the following address: []. . . .We would like to be notified in
> writing within the statutory timeframe provided in [Colo. Rev. Stat.] §
> 10–4–708(1) for **any** delay or denial of [Plaintiff]'s *Personal Injury Protection
> benefits*. If you need additional information in order to process [Plaintiff]'s claim,
> please contact us immediately.  . . . Additionally, please direct **all** communication
> to this office. *We are not authorizing any ex parte communication between
> Allstate Insurance Company and [Plaintiff].*

(*Id.*, Ex. A–3 at 2–3 [9/28/1999 letter from T. Travis to Allstate Ins. Co.] [italicized emphases

added].)

Not only does this letter unequivocally demonstrate that Mr. Travis represented Plaintiff's

claim for PIP benefits,[11] so too does Plaintiff's own deposition testimony:

---

[10]Moreover, a reader of the letter cannot avoid inferring an implicit threat of litigation if
such PIP benefits would have remained unpaid.

[11]Nevertheless, Plaintiff releases a veritable school of red herrings. First, he asserts that
Mr. Travis ceased representing Plaintiff once he had settled his personal injury claim against
Defendant. (Pl.'s Resp. at 14.) Then he contends that after this point in time, Defendant "dealt
directly" with Plaintiff by continuing to pay him his wage loss benefit checks. (*Id.*) Finally,
Plaintiff asks: "if Mr. Travis was representing [Plaintiff] on a PIP claim against Defendant, why
was [Defendant] communicating directly with [Plaintiff]?" (*Id.*) Although the court perceives
myriad factual equivocations and logic deficiencies in this line of argument, the court will limit
itself to indulging one commonsense answer to Plaintiff's "rhetorical" question: one would
assume Mr. Travis was out of the picture because he believed that he had secured precisely the
wage-loss benefits to which Plaintiff was entitled. *See* Colo. R. Prof'l Conduct 1.3 cmt. (2006)
("If a lawyer's employment is limited to a specific matter, the relationship terminates when the
matter has been resolved.").

Q.      I take it . . . that you expected that Mr. Travis would collect any PIP
        benefits you were entitled to?
A.      Yes.
* * *
Q.      And I take it . . . if you were entitled in September 1999 to higher PIP
        limits . . . you expected Mr. Travis to get those for you, didn't you?
A.      At the time I didn't know about PIP at all.  I expected Mr. Travis to do what he
        could do for me.
Q.      Right.  But you didn't know anything about PIP, so you expected Mr. Travis to do
        it for you?
A.      Yes, sir.
Q.      And you expected him to get whatever benefits you were entitled to, didn't you?
A.      Yeah.  Yes, sorry.
* * *
Q.      Ms. Daily was one of the adjustors that dealt with your PIP claims?
A.      Yes, sir.
Q.      And that was the person that Mr. Travis dealt with on your behalf?
A.      Yes.
* * *
Q.      Have you ever made a claim for higher PIP limits or higher PIP coverage, as you
        use that term?
A.      No.
Q.      But I take it you expected Mr. Travis to do that on your behalf if that's what you
        were entitled to?
A.      Yes.

(*Id.*, Ex. A–2 at 41, 42–43, 49, 59 [Dep. of C. Sanford].)

Faced with this damning tableau of evidence, Plaintiff had the gall to submit a sworn

affidavit of Mr. Travis that blatantly — and unpersuasively — contradicts the inevitable

conclusion any reasonable mind would draw from the retainer agreement, the letter, and Plaintiff's

own deposition testimony: that Mr. Travis represented Plaintiff with respect to his claim for PIP

benefits arising out of the accident.  Under oath, Mr. Travis states: "The letter of September 28,

1999 to Allstate Insurance did not state that I was representing [Plaintiff] on a PIP claim against

Allstate.  In fact, I was advising Allstate of my representation for purposes of assisting [Plaintiff]

-19-

in processing paperwork." (Pl.'s Resp., Ex. 3 ¶ 5 [Travis Aff.]; *c.f.* Def.'s Br., Ex. A–3 at 2–3 [9/28/1999 letter from T. Travis to Allstate Ins. Co.] ["We would like to be notified in writing . . . for any delay or denial of [Plaintiff]'s Personal Injury Protection benefits."].) The court is less than bedazzled by this ploy. There is no doubt whatsoever that the "paperwork" to which Mr. Travis refers in his *sworn affidavit* is none other than paperwork attendant to Plaintiff's claims for wage-loss and further benefits *under PIP*. (Def.'s Br., Ex. A–3 at 2–3 [9/28/1999 letter from T. Travis to Allstate Ins. Co.].) Consequently, the court rejects Plaintiff's ignominious attempt to manufacture an issue of fact. Mr. Travis's self-serving affidavit[12] — which is undermined by his September 1999 letter to Defendant, his retainer agreement with Plaintiff, and Plaintiff's own testimony — is entirely incredible, and no reasonable juror would rely thereupon.[13]

Moreover, it is obvious that had Mr. Travis *noticed* that Defendant was in any way attempting to shortchange Plaintiff by only providing basic PIP benefits, Mr. Travis was obliged to represent Plaintiff's rights relating thereto, since he had already undertaken to recover such benefits for Plaintiff. (*See id.*) Unfortunately for Plaintiff, Mr. Travis failed to extrapolate from

---

[12]The court comfortably asserts that the testimony is self-serving in light of the fact that Mr. Travis is among the counsel representing Plaintiff in the instant case.

[13]And no respectable lawyer would say, sign, or submit such tripe. To say the least, the court is unimpressed by the underhanded, unethical manner in which Mr. Travis has attempted to overpower contrary evidence by making misleading statements in a *sworn affidavit*. *See generally* Colo. R. Prof'l Conduct 4.1 (2006) ("In the course of representing a client a lawyer shall not knowingly . . . make a false or misleading statement of fact or law to a third person."); Fed. R. Civ. P. 11(b) (2006) ("By presenting to the court . . . [any] paper, an attorney . . . is certifying that to the best of [his] knowledge . . . [the] factual contentions have evidentiary support.").

the fact that Plaintiff was in receipt of only basic PIP benefits the imaginative legal theory upon

which Plaintiff's present case is predicated.  Mr. Travis's failure to do so cannot prevent

Plaintiff's cause of action from accruing.  *See Folks*, 04–N–483–EWN–BNB at 15 (determining

Mr. Travis is a PIP attorney, and charging him with knowledge of the law); *see also* Colo. Rev.

Stat. §§ 10–80–108(1), (6), (8) (stating that a cause of action accrues when it "should have been

discovered by the exercise of reasonable diligence"); *Ormiston*, 117 F.3d at 72 n.5; *Harrison*, 107

P.3d at 972.

Thus, Mr. Travis is most unlike the Social Security lawyer to whom Plaintiff analogizes.

Instead, there is absolutely no doubt that Mr. Travis represented Plaintiff with respect to his claim

for PIP benefits, precisely as he represented the plaintiff in *Folks*.  *See Folks*,

04–N–483–EWN–BNB at 7.  And thus, my determination in *Folks* is equally applicable here:

"[the p]laintiff, through her attorney, was aware of the violation of Colorado law and her ensuing

claim" on the date she retained Mr. Travis.  *Id.* at 15.  Since Plaintiff in this case retained Mr.

Travis on September 28, 1999, that day is when his cause of action against Defendant accrued.

> ### ii.  Under **Schimmer**, *Plaintiff's Cause of Action Accrued No Later Than October 1999*

Even assuming Plaintiff's cause of action did not accrue upon retention of Mr. Travis, it

accrued shortly thereafter under *Schimmer*.  As noted above, notwithstanding the fact that the

two letters from the insurer to the *Schimmer* plaintiff failed to indicate to the plaintiff that he

would receive only basic PIP benefits or that the insurer had failed to offer enhanced coverage,

the *Schimmer* court determined that the two letters put the plaintiff on notice of the fact that

"there were dollar and time limitations on the PIP benefits he would receive."  2006 U.S. Dist.

LEXIS 60497, at *11–12.  In the instant case, Plaintiff himself asserts that, in a letter dated

October 22, 1999, Defendant expressly advised him that Ms. Drake's policy contained only basic

PIP coverage.  (Pl.'s Resp., Statement of Disputed Material Facts ¶ 6; *admitted at* Def.'s Reply,

Resp. Concerning Pl.'s Disputed Material Facts ¶ 6.)  This fact makes this case is an even easier

one than *Schimmer*.  Thus, under *Schimmer*, Plaintiff became aware of the "essential facts in

support of his CAARA claim" upon receipt of the letter in October 1999.  2006 U.S. Dist. LEXIS

60497, at *12; *see also Ormiston*, 117 F.3d at 72 n.5; *Harrison*, 107 P.3d at 972; *see also*

*Williams v. Woodruff*, 85 P. 90, 97 (Colo. 1905) (stating claim accrued when person "knew facts

sufficient to put a person of ordinary prudence and sagacity upon inquiry which would have led

inevitably to a knowledge of those facts, if it had been pursued with reasonable diligence").

Consequently, the three-year statute of limitations applicable to "all actions" arising from CAARA

ran out in October 2002, well before Plaintiff filed the instant case.  *See* Colo. Rev. Stat. §

13–80–101(1)(j).

> ### iii.   Under **Nelson** and **Colby**, *Plaintiff's Cause of Action Accrued No Later Than September 2000*

Even assuming that Plaintiff's claims did not accrue when he retained Mr. Travis in

September 1999 or when he received a benefits letter from Defendant in October 1999, his cause

of action accrued no later than September 2000, when he ceased receiving basic PIP benefits.  As

noted above, under *Nelson* and *Colby*, Plaintiff "should have known" on the last date of payment

under Ms. Drake's basic PIP policy that Defendant had not paid him extended benefits.  *See*

*Nelson*, 419 F.3d at 1121; *Colby*, 2006 U.S. Dist. LEXIS 47212, at *2. Here, it is undisputed that Plaintiff received his last basic PIP payment on September 27, 2000. (Def.'s Br., Statement of Undisputed Material Facts ¶ 7; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 7.) Accordingly, I find that had Plaintiff exercised reasonable diligence, he should have known of his cause of action no later than September 2000. *See* Colo. Rev. Stat. § 13–80–108(8); *Ormiston*, 117 F.3d at 72 n.5; *Harrison*, 107 P.3d at 972; *see also Williams*, 85 P. at 97. Thus, the three-year statute of limitations applicable to "all actions" arising from CAARA expired no later than September 2003, long before the filing of the instant case. *See* Colo. Rev. Stat. § 13–80–101(1)(j).

### iv.    *Reformation Rehash*

Seemingly at random, toward the end of his brief, Plaintiff argues that his claim for reformation is equitable in nature and, thus, application of the statute of limitations is not appropriate. (Pl.'s Resp. at 18.) Plaintiff states that he "is unaware of any Colorado appellate decisions that have applied a statute of limitations to bar a claim for reformation," and ramblingly proceeds to argue:

> [A] court may, by way of analogy, consider "the statute of limitations relating to actions at law of like character" in determining whether a delay was unreasonable under the circumstances, a court's application of a statute of limitations to bar an equitable claim would, under Colorado law, constitute reversible error.

(*Id.* [citations omitted].)  I have already dealt with this precise argument, since Plaintiff's counsel

asserted it in a summary judgment brief in another PIP case the same counsel brought before me.[14]

Since Plaintiff's counsel saw fit to cut and paste, I follow suit:

> Curiously, [the p]laintiffs acknowledge the long-held principle that in performing
> laches analyses, courts in equity are "'not bound by the statute of limitations, but,
> in the absence of extraordinary circumstances, [courts] will usually grant or
> withhold relief in analogy to the statute of limitations relating to actions at law of
> like character.'" *Brooks v. Bank of Boulder*, 911 F. Supp. 470, 476 (D. Colo.
> 1996) (quoting *Shell v. Strong*, 151 F.2d 909, 911 [10th Cir. 1945]). [The
> p]laintiffs do not argue that any extraordinary circumstances exist in the instant
> case.

*Breaux v. Am. Family Mut. Ins. Co.*, 2006 U.S. Dist. LEXIS 62715, at *27–28 (D. Colo. Sept. 1,

2006).  Nor does Plaintiff in the instant case argue that such circumstances exist.  (*See* Pl.'s Resp.,

*passim*.)  Nor do I, after careful consideration of the instant case, find that extraordinary

circumstances direct this decision away from *Nelson*.  *See Nelson*, 419 F.3d at 1120 (citing

*Interbank Invs., L.L.C. v. Vail Valley Consol. Water Dist.*, 12 P.3d 1224, 1230 [Colo. Ct. App.

2000]) (requiring courts merely to list the particular circumstances leading to a departure from

applying statute of limitations, not those leading to application thereof).

---

[14]In that case, Plaintiff's counsel made the *identical* argument:
Plaintiff is unaware of any Colorado appellate decisions that have applied a statute
of limitations to bar a claim for reformation . . . . [A] court may, by way of
analogy, consider "the statute of limitations relating to actions at law of like
character" in determining whether a delay was unreasonable under the
circumstances, a court's application of a statute of limitations to bar an equitable
claim would, under Colorado law, constitute reversible error.
(*Breaux. v. Am. Family Mut. Ins. Co.*, 04–cv–00191–EWN–MJW, docket no. 130, Pl.'s Resp. to
Def. Am. Family Mut. Ins. Co.'s Mot. for Partial Summ. J. in Consolidated Case at 12 [filed
February 24, 2006].)

Thus, the "relevance of *Nelson* ought to be evident," since "[t]he *Nelson* court applied a

three-year statute of limitations and found the claims, including the reformation claim, untimely."

*Breaux*, 2006 U.S. Dist. LEXIS 62715, at *28 (citing *Nelson*, 419 F.3d at 1121).  As I stated in

*Breaux*:

> [R]elevant Colorado law contemplated a three-year statute of limitations for
> CAARA claims.  Specifically, former Colorado Revised Statutes section
> 13–80–101 mandated that a three-year statute of limitations applied to all actions
> under CAARA, "regardless of the theory upon which suit is brought, or against
> whom suit is brought."  Colo. Rev. Stat. §§ 13–80–101, 13–80–101(1)(j) (2002);
> *see Nelson*, 419 F.3d at 1120 (applying three-year statute of limitations to CAARA
> claims); *Jones v. Cox*, 828 P.2d 218, 222–23, 225 (Colo. 1992) (same). Further,
> both the Tenth Circuit and the Colorado Supreme Court have emphasized that an
> action need only "'originate from,' 'grow out of,' or 'flow from'" CAARA to be
> deemed as arising under the statute.  *Nelson*, 419 F.3d at 1120 (citation omitted).

*Id.* at *30–31.  Here, as in *Nelson*, although Plaintiff seeks the equitable remedy of reformation,

his claim clearly arises from "rights exclusively provided under CAARA and from the alleged

violation of CAARA."  419 F.3d at 1121.  Consequently, I deem Plaintiff's equitable claim to be

of similar character as actions at law under CAARA, to which the established three-year statute of

limitations applies.

> **b.    *Equitable Tolling***

Without indicating when his cause of action accrued, Plaintiff argues that the statute of

limitations was tolled because Defendant's "acts or omissions contributed to the running of any

applicable statute of limitations by failing to advise the insureds [sic] of their [sic] right to obtain

extended PIP coverage."  (Pl.'s Resp. at 16.)  Defendant makes a variety of arguments against the

applicability of the doctrine, but its last is closest to the mark: "[e]ven if equitable tolling were

applicable in this case, in light of *Nelson*, no such tolling could operate beyond September 2000, when Plaintiff received his last wage loss payment from [Defendant]."  (Def.'s Reply at 22 [citing *Nelson*, 419 F.3d at 1121].)  The Colorado Supreme Court has explained: "[E]quity will toll a statute of limitations if a party fails to make a legally required disclosure and the other party is prejudiced as a result."  *Shell Western E&P, Inc. v. Dolores County Bd. of Comm'rs*, 948 P.2d 1002, 1007 (Colo. 1997).

　　　I have already determined that had Plaintiff exercised reasonable diligence, the last possible date he should have come to know of his cause of action was in September 2000, when he stopped receiving checks for lost wages.  Even assuming, as does Plaintiff, that (1) Plaintiff was entitled to enhanced PIP benefits, and (2) Defendant failed to furnish him with a legally required disclosure pertaining thereto, I find that Plaintiff could not have been prejudiced by Defendant's failure to apprise him of a fact that he himself should have come to appreciate first in September 1999, then again in October 1999, and once again in September 2000.

　　　Plaintiff makes two unpersuasive arguments counseling against this result.  First, Plaintiff cites to two pre-*Nelson* cases in which the courts agreed that the plaintiffs did not know about their rights to enhanced PIP benefits until they contacted attorneys.  (Pl.'s Resp. at 15 [citing *Kavka v. State Farm Mut. Auto. Ins. Co.*, 04–N–483 (D. Colo. Dec., 10, 2004) (Nottingham, J.); *Thomas v. State Farm Ins. Cos.*, 04CV653, Div. 5 (Boulder County Dist. Ct. Feb. 15, 2005)].)[15]  This line of

---

[15]The Tenth Circuit decided *Nelson* on August 17, 2005.  Although *Nelson* did not address an equitable tolling argument, I fail to see how such an argument could survive cessation of payment of basic PIP benefits: it is difficult to imagine how a plaintiff could show prejudice arising out of an insurer's wrongful decision to withhold information of which the plaintiff should

argument is singularly puzzling in light of the fact that Plaintiff hired Mr. Travis promptly after his

accident to represent his interest in obtaining, *inter alia*, the PIP benefits to which he was entitled

under Ms. Drake's policy.  (*See id.*, Ex. 1 at 1 [Travis Retainer Agreement].)  Plaintiff cites no

authority indicating that equitable tolling ought to apply in a situation where an attorney with all the

essential facts before him fails to ascertain a legal theory, well within the scope of representation,

upon which his client might recover.  Indeed, a rule of equity that would toll the statute of limitations

indefinitely until a plaintiff retained counsel that is well-apprised of the law would be a miscarriage

of justice, running contrary to the policies animating statutes of limitations and casting a shadow of

doubt upon the principles underlying *res judicata*.  *See generally Sulca*, 77 P.3d at 899.  Such a rule

is ill-advised and unnecessary.  When the acts or omissions of counsel permit a statute of limitations

to run on an otherwise viable claim, a plaintiff is not without remedy: he may sue his attorney for

malpractice.  *See Giron v. Koktavy*, 124 P.3d 821, 824 (Colo. Ct. App. 2005).  Plaintiff in the instant

case is free to pursue such a course of conduct.

Next, Plaintiff bizarrely argues that "the statute of limitations may not begin to run against

[Plaintiff] until [Defendant] refused [sic] to pay benefits to which [Plaintiff] was entitled."  (Pl.'s Br.

at 17.)  Plaintiff is wrong.  Although it is possible to imagine a factual scenario where a plaintiff might

first come to know the facts essential to his a cause of action based on an insurer's refusal to pay

benefits, the evidence in the instant case evinces no such scenario.  I have already determined that

Plaintiff should have discovered his claims against Defendant no later than September 2000.  *See*

---

have known upon termination of basic PIP benefits.  *See Nelson*, 419 F.3d at 1120; *Shell Western*,
948 P.2d at 1007.

*Analysis* § 2(a)(iii), *supra*.  This was well before Plaintiff first demanded enhanced PIP benefits.  (*See* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 6 ["(Plaintiff) admits that he made no demand for payment of benefits at extended PIP levels prior to the filing of this lawsuit."].)

Because it matters not for purposes of CAARA whether an action was "one for reformation, breach of contract, or violation of state law," each of Plaintiff's claims must be dismissed as time-barred.  *See Nelson*, 419 F.3d at 1121.

**3.     *Conclusion***

Based on the foregoing it is therefore ORDERED that:

1.     DEFENDANT's motion for summary judgment (#64) is GRANTED.

2.     PLAINTIFF's motion for partial summary judgment (#66) is DENIED.

The clerk shall forthwith enter judgment in favor of Defendant and against Plaintiff, dismissing Plaintiff's claims with prejudice.  Defendant may have its costs by filing a bill of costs within eleven days of the date of this order.

Dated this 9th day of November, 2006

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge